IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-16081 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| DANIEL DESANTIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Total Quality Logistics LLC ("TQL"), an Ohio-registered limited liability company with its principal place of business located in Cincinnati, Ohio, brings its complaint against its former employee, Defendant Daniel DeSantis ("DeSantis"), a resident of Englewood, Colorado, for breach of contract, tortious interference, and misappropriation of trade secrets. In its complaint, TQL alleges that DeSantis willfully breached the terms of his employment agreement with TQL by engaging in a deceptive scheme to use confidential information and trade secrets gained from his employment with TQL to steal business from TQL and poach its employees.

Before the Court is DeSantis's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, or, in the alternative, to transfer venue to the U.S. District Court for the District of Colorado. For the following reasons, the Court denies DeSantis's motion.

**Background**

The present case is not a matter of first impression for the federal courts. In their filings, both parties refer extensively to the decision in *Total Quality Logistics, LLC v. Daniel DeSantis*, No. 18-cv-00796-MRB, Dkt. 9 (S.D. Ohio Feb. 7, 2020), where the U.S. District Court for the Southern District of Ohio dismissed TQL's complaint for lack of personal jurisdiction and improper venue. *See also id*

1

at Dkt. 15 (affirming dismissal for lack of personal jurisdiction and improper venue on motion for reconsideration by TQL). As such, the Court focuses on the facts as they relate to DeSantis's present motion, drawing from the parties' filings and the opinions from the prior case in the Southern District of Ohio.

From August 2013 through February 2017, DeSantis worked for TQL in a variety of roles. From August 19, 2013 to September 13, 2015, TQL employed DeSantis to work in its Chicago, Illinois office. (Dkt. 1, ¶ 16.) As part of his employment, DeSantis executed an Employee Non-Compete, Confidentiality and Non-Solicitation Agreement (the "Agreement") that contained several restrictive covenants limiting his post-employment conduct. (*Id.* at ¶¶ 21–28.) The Agreement also contained a forum-selection clause that specified that

> Th[e] Agreement shall be interpreted and enforced under the laws of the State of Ohio, and any action, suit or proceeding with respect to or arising out of th[e] Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, Court of Common Pleas, Hamilton County, Ohio, the United States District Court for the Southern District of Ohio, the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois.

(*Id.* at Ex. A.) On or around September 14, 2015, DeSantis transferred to TQL's Denver, Colorado office. (*Id.* at ¶ 18.) DeSantis's employment with TQL was terminated on February 10, 2017. (*Id.* at ¶ 28.) TQL alleges that after leaving TQL, DeSantis "set in motion a scheme to use the confidential information and trade secrets he acquired from TQL to steal TQL's customers, at the expense of TQL and in violation of the Agreement." (*Id.* at ¶ 29.) This conduct included consulting with, contracting with, and otherwise working with Logistics Dynamics, Inc. ("LDI"), a New York-based competitor of TQL, and soliciting, recruiting, and employing Shelby Hyde, a former TQL employee and Colorado resident, to perform services for LDI in February 2018. (*Id.* at ¶ 33–34.)

In response to DeSantis's conduct, TQL filed an action against DeSantis in October 2018 in the Court of Common Pleas of Clermont County, Ohio. (*Id.* at ¶ 60.) DeSantis then removed that

2

action to the United States District Court for the Southern District of Ohio. (*Id.*); *see also Total Quality Logistics, LLC v. Daniel DeSantis*, No. 18-cv-00796 (S.D. Ohio 2018) (Barrett, J.) (hereinafter "*TQL I*"). There, DeSantis moved to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. (*Id.*)

In February 2020, the *TQL I* court granted DeSantis's motion, finding first that the forum-selection clause requiring litigation in Ohio was unenforceable as to confer personal jurisdiction and venue in Ohio and subsequently that the court both lacked personal jurisdiction over DeSantis and that venue was improper in Ohio. *TQL I*, Dkt. 9. After the court denied TQL's motion for reconsideration, *TQL I*, Dkt. 15, TQL filed the instant action before the Court, to which DeSantis responded with his motion to dismiss.

The Court now considers DeSantis's motion.

**Legal Standard**

Under Rule 12(b)(3), a party may move for dismissal of an action that is filed in an improper venue. Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district. *See Gilman Opco LLC v. Lanman Oil Co.*, No. 13-cv-7846, 2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014) (St. Eve, J.). In assessing a defendant's motion to dismiss under Rule 12(b)(3) for improper venue, a district court assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 810 (7th Cir. 2016). The district court may consider evidence outside the pleadings to determine whether the chosen venue is appropriate. *Id.*

**Discussion**

DeSantis sets forth three arguments in his motion. First, he argues that because the *TQL I* court "has already considered and ruled upon the issue of proper venue as to the same parties and claims in this action," the *TQL I* court's findings are "entitled to preclusive effect based on the doctrine

3

of collateral estoppel (also known as issue preclusion) or the law of the case doctrine." (Dkt. 13, at *5.) Second, DeSantis argues that even if the *TQL I* court's findings are not preclusive, venue is improper in the Northern District of Illinois and the case should be dismissed for that reason. (*Id.* at *9.) Finally, DeSantis argues, in the alternative, that the case should be transferred to the District of Colorado. (*Id.* at *10.)

The resolution of the first argument is dispositive of the remaining two: the Court is not precluded by the *TQL I* court's holding, the forum-selection clause is enforceable as to confer personal jurisdiction on and to make venue proper in the Northern District of Illinois, and transfer of venue to the District of Colorado would not be in the interest of justice.

*A. Enforceability of forum-selection clauses under Ohio law*

As each of the parties emphasize in their briefs, the dispositive question in this motion is whether the forum-selection clause contained in the Agreement between TQL and DeSantis is enforceable. It is axiomatic that "[a] federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).[1] But as the *TQL I* court ably explained, "absent a strong showing that it should be set aside," the requirement that a court have personal jurisdiction over a party is waivable through a forum-selection clause. *Preferred Cap., Inc. v. Power Eng'g Grp., Inc.*, 112 Ohio St. 3d 429, 431, 860 N.E.2d 741, 744 (2007). Under Ohio law, a forum-selection clause in a commercial contract between business entities is enforceable "so long as [its] enforcement does not deprive litigants of their day in court." *Kennecorp Mortg. Brokers,*

---

[1] Because the Agreement between the two parties specifies that it "shall be interpreted and enforced under the laws of the State of Ohio," Dkt. 1, Ex. A, the Court applies Ohio law in its analysis of the enforceability of the forum-selection clause. *Jackson v. Payday Fin., LLC*, 764 F.3d 765 (7th Cir. 2014) (explaining that "[i]n contracts containing a choice of law clause . . . the law designated in the choice of law clause [is] used to determine the validity of the forum selection clause").

4

*Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St. 3d 173, 175, 610 N.E.2d 987, 989 (1993). Thus, "absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." *Id.* (citing *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513, 523 (1972)).

In the context of agreements between an employer and an employee, however, the law is less settled. *See Zilbert v. Proficio Mortg. Ventures, L.L.C.*, 2014 WL 1776004, at *5 (Ohio App. Ct. May 1, 2014). Generally, a forum-selection clause in an employment contract will be enforced unless the opposing party establishes that: (1) the contract was the result of fraud or overreaching; (2) enforcement would violate the strong public policy of the forum state; or (3) enforcement would, under the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *See Ayyash v. Horizon Freight Sys., Inc.*, No. 15-cv-10296, 2018 WL 5994755, at *4 (N.D. Ill. Nov. 15, 2018) (Wood, J.) (citing *Zilbert*, 2014 WL 1776004, at *5).

To determine whether a forum is unreasonable, Ohio courts look at the following factors: (1) which law controls the contractual dispute; (2) what residency the parties maintain; (3) where the contract was executed or performed; (4) where the witnesses and parties to the litigation are located; and (5) whether the forum's designated location is inconvenient to the parties. *Barrett v. Picker Int'l, Inc.*, 68 Ohio App. 3d 820, 825, 589 N.E.2d 1372, 1374–75 (1990) (citing *Clinton v. Janger*, 583 F. Supp. 284, 289 (N.D. Ill. 1984) (Hart, J.)).

B. *The Southern District of Ohio's analysis of the forum-selection clause in* TQL I

After setting forth the above factors for determining the enforceability of a forum-selection clause, the *TQL I* court applied them to the circumstances as described by the parties in their briefings on DeSantis's motion to dismiss. *TQL I*, Dkt. 9, at *6–10.

5

First, the court assessed overreaching. Overreaching is defined as the "act or an instance of taking unfair commercial advantage of another." *Buckeye Check Cashing of Arizona, Inc. v. Lang*, No. 2:06-CV-792, 2007 WL 641824, at *5 (S.D. Ohio Feb. 23, 2007). Unequal bargaining power between the parties or the lack of ability to negotiate over the clause do not de facto support a finding of overreaching. *Id.* But "overreaching may be found if the disparity in bargaining power was used to take unfair advantage of the employee." *Id.*

In its response to DeSantis's motion to dismiss in *TQL I* (and similarly filed in its response to DeSantis's present motion to dismiss), TQL filed an affidavit by its Risk Manager, Marc Bostwick that stated that "[p]rior to beginning employment at the Chicago Office, DeSantis had the opportunity to review the [Agreement] and was informed that he would be required to sign it as a condition of his employment." (Dkt. 16, Ex. A.) In his reply, DeSantis filed a countervailing affidavit stating that he had resigned from his previous employment and accepted employment with TQL "before [he] was required to accept a forum selection clause as a condition of employment." *TQL I*, Dkt. 6, Ex. 1. Reading the two statements together, the *TQL I* court found that "DeSantis apparently did not know that he would be required to agree to an Ohio forum selection clause *during the recruitment process and prior to resigning his previous employment* in anticipation of accepting TQL's offer of employment." *TQL I*, Dkt. 9 (emphasis in original). To the *TQL I* court's eye, "though not precisely the circumstance described in *Buckeye*, this omission d[id] indeed suggest overreaching."[2] *Id.*

---

[2] In *Buckeye*, four conditions contributed to the court's finding that the plaintiff–employer had overreached in binding the defendant–employees to the forum-selection clause contained in their employment contracts. First, "defendants were employed by plaintiff in modest-paying, lower-level jobs, not high-level corporate positions where the applicants could be expected to have a greater degree of bargaining power or sophisticated knowledge about contract terms." *Buckeye*, 2007 WL 641824, at *6. Second, the defendants were not permitted to negotiate any of the terms of their employment contracts. *Id.* Third, and most significantly to the *TQL I* court, "[defendants] were not informed about or asked to sign the Agreement until after they had resigned their previous employment and started working for plaintiff" and "gave up other employment in reliance on plaintiff's offer of employment," without being "timely advised by plaintiff of all the terms of that employment." *Id.* at 7. Fourth, because plaintiff was an Ohio corporation but had business locations "exclusively in Arizona," there was "no apparent rational reason for the forum selection clause other than to make it more difficult for employees to litigate issues relating to their employment." *Id.*

6

As to the second enforceability factor—whether enforcement would violate the strong public policy of the forum state—the *TQL I* court noted that DeSantis did not argue, "nor could he," that enforcement of the forum selection clause would violate the public policy of Ohio. *Id.* As such, that factor weighed in favor of enforcement of the forum–selection clause.

Finally, the *TQL I* court applied the five *Barrett* factors to determine whether enforcement of the forum-selection clause would be unreasonable or unjust. The first factor—the controlling law—favored enforcement, because the Agreement contained an Ohio choice of law provision. The other four factors did not. Because only TQL resided in Ohio, the parties executed the Agreement in Illinois and DeSantis performed under the Agreement in Illinois and Colorado, and the necessary witnesses—representatives of LDI and Shelby Hyde—resided in New York and Colorado respectively and did not appear to be subject to subpoena in Ohio, factors two, three, and four all weighed against enforcement. *Id.*

As to the fifth *Barrett* factor—whether the forum's designated location is inconvenient to the parties—TQL argued that DeSantis could not claim inconvenience because "[f]rom the outset of [his] employment relationship with TQL, DeSantis was on notice that he would be haled into Ohio courts for any dispute relating to this Agreement." *TQL I*, Dkt. 9, at *10. The *TQL I* court rejected this argument as being "not wholly accurate," noting that "Ohio was one of two possibilities" because the forum-selection clause listed both Ohio and Illinois courts. *Id.* As such, the fifth factor weighed against enforcement.

After completing its analysis, the *TQL I* court concluded that "[w]hether or not the product of overreaching, . . . enforcement of the forum selection clause in this circumstance would be unreasonable and unjust." *Id.* After finding that DeSantis had not purposefully availed himself of courts in Ohio, the *TQL I* court held that it lacked personal jurisdiction over DeSantis. Having made this jurisdictional determination, the *TQL I* court also touched on the question of venue, explaining

7

that "a substantial part of the events giving rise to TQL's claims did not occur in the Southern District of Ohio, but, rather, in the District of Colorado, with the exception of one alleged breach in Buffalo, located in the Western District of New York." *Id.* at *15. But because there had been no showing that transferring the case would be in the "interest of justice," the *TQL I* court granted DeSantis's motion and dismissed TQL's complaint. *Id.*

The *TQL I* court affirmed its holding on a motion for reconsideration filed by TQL. *TQL I*, Dkt. 15. In assessing whether its decision exhibited a "clear error of law," *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005), the *TQL I* court found that there "d[id] not appear to be any clear legal error in the Court's determination that the forum-selection clause is unenforceable and courts in Ohio would have no jurisdiction over DeSantis on those grounds." *TQL I*, Dkt. 15 at *9. The *TQL I* court also found that reconsideration was not warranted "to prevent manifest injustice," *Intera Corp.*, 428 F.3d at 620, stating that "[i]f courts in Ohio would be an improper forum for this case, TQL could simply bring the case in Illinois (a state not only selected by TQL in its forum selection clause, but in which it employed DeSantis) . . . or in Colorado (where DeSantis and Hyde, a key witness, live) . . . ." *TQL I*, Dkt. 15, at *10–11. Accordingly, the *TQL I* court denied TQL's motion for reconsideration.

C. *The preclusive effect of the Southern District of Ohio's holding in* TQL I

In light of the Southern District of Ohio's holding in *TQL I*, the question before the Court is whether issue preclusion and the law of the case doctrine bind the Court to the Southern District of Ohio's analysis and holding that the forum-selection clause in the Agreement was unenforceable and that venue was improper in Ohio.

Issue preclusion and the law of the case doctrine serve the same purpose: to promote judicial efficiency, conserve judicial resources, and minimize the possibility of inconsistent decisions across the federal courts. *Taylor v. Sturgell*, 553 U.S. 880, 893, 128 S. Ct. 2161, 2171, 171 L. E. 2d 155 (2008) (explaining that issue preclusion protects against "the expense and vexation attending multiple

8

lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions") (internal quotation marks omitted); *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816–17, 108 S. Ct. 2166, 2177–78, 100 L. Ed. 2d 811 (1988) (noting that the law of the case doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues") (internal quotation marks omitted). Relitigation may be foreclosed on issues of evidentiary fact, of "ultimate fact" (i.e., the application of law to fact), or of law. RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

Issue preclusion is proper where: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Similarly, the law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Christianson*, 486 U.S. at 816. As with issue preclusion, the law of the case doctrine "does not apply at all where the precise issue presented differs from the one decided earlier." *Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022).

DeSantis relies on his claim that the holding in *TQL I* precludes the Court from addressing the enforceability of the Agreement in the present circumstances. But this argument fails on the first and third elements of issue preclusion: the sameness of the issue in the prior litigation and the essentiality of the determination of the issue to the final judgment.

To the first element—that the issue sought to be precluded here is the same as the issue in the prior litigation—the *TQL I* court applied the five *Barrett* factors to the question of whether enforcing the forum-selection clause would be unjust and unreasonable "in this circumstance" (*i.e.*, litigation in Ohio). *TQL*, Dkt. 6 at *10. As such, the Court can and must apply the *Barrett* factors to determine

9

whether enforcing the forum-selection clause would be unjust and unreasonable in the *present* circumstance (*i.e.*, litigation in Illinois).

The third element of issue preclusion—that the determination of the issue was essential to the final judgment—similarly permits the Court to address the question of overreaching. For a federal court's ruling on a particular issue to be given preclusive effect, that issue must not only have been actually decided but also "necessarily decided" in the prior action. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 689 (7th Cir. 2012) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 and Comment h (1982)). As further explained by the Restatement (Second) of Judgments, "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded" as such nonessential determinations "have the characteristics of dicta." Section 27 and Comment h (1982)).

Here, while the *TQL I* court found that the circumstances under which DeSantis signed the Agreement "suggest[ed] overreaching," *TQL I*, Dkt. 6, at *8, the *TQL I* court's judgment, namely that the forum-selection clause was unenforceable, was not dependent on that determination. Instead, the *TQL I* court rested its judgment squarely on its finding that the forum-selection clause was unreasonable and unjust.

The *TQL I* court's language in its holding on the question of enforceability shows that the judgment was not dependent on the "overreaching" determination: "*Whether or not* the product of overreaching, the Court concludes that enforcement of the forum selection clause *in this circumstance* would be *unreasonable and unjust*." *Id.* at *10 (emphasis added). The fact that the *TQL I* court, in denying TQL's motion for reconsideration, stated that "TQL could simply bring the case in Illinois (a state not only selected by TQL in its forum selection clause, but in which it employed DeSantis)," *TQL I*, Dkt. 15 at *10–11, is further evidence that the *TQL I* court's holding on the enforceability of the forum-selection clause was limited to enforceability in Ohio and did not have the effect of

10

invalidating the entire clause that a determination of overreaching would have had. As such, the *TQL I* court's findings on overreaching are properly treated as dicta, nonessential to its judgment and lacking preclusive effect to the Court's present consideration of the forum-selection clause.

The same weaknesses in DeSantis's issue preclusion argument apply to his arguments on the applicability of the law of the case doctrine, as the *TQL I* court did not determine whether the forum-selection clause was unenforceable generally or as applied to litigation in Illinois. For these reasons, the *TQL I* court's holding does not have preclusive effect and this Court must determine whether the forum-selection clause is enforceable to confer personal jurisdiction and venue to TQL's complaint in Illinois.

D. *The enforceability of the forum-selection clause as to litigation in Illinois*

A forum-selection clause in an employment contract will be enforced unless the opposing party establishes that: (1) the contract was the result of fraud or overreaching; (2) enforcement would violate the strong public policy of the forum state; or (3) enforcement would, under the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Zilbert*, 2014 WL 1776004, at *5. To determine whether a forum is unreasonable, Ohio courts look at the five *Barrett* factors: (1) which law controls the contractual dispute; (2) what residency do the parties maintain; (3) where the contract was executed or performed; (4) where the witnesses and parties to the litigation are located; and (5) whether the forum's designated location is inconvenient to the parties. *Barrett*, 68 Ohio App. 3d at 825.

While not preclusive, the *TQL I* court's findings are instructive to the analysis of the enforceability of the forum-selection clause as to litigation in Illinois. To the question of whether the contract was the result of fraud or overreaching, as the *TQL I* court found, while the circumstances described by the parties in their briefings "suggest overreaching," *TQL I*, Dkt. 6 at *8, the affidavits provided by the parties do not provide sufficient evidence to conclusively determine that TQL relied

11

upon a disparity in bargaining power to take advantage of DeSantis and bind him to the forum-selection clause. *See, e.g., Buckeye Check Cashing of Arizona, Inc.*, 2007 WL 641824, at *5–7 (summary provided *supra* n.2). As such, this factor neither weighs for nor against the enforceability of the forum-selection clause. As to the second factor—whether enforcement would violate the strong public policy of the forum state—Illinois, like most states, recognizes the validity of forum-selection clauses. *See, e.g., GPS USA, Inc. v. Performance Powdercoating*, 389 Ill. Dec. 493, 26 N.E.3d 574, 583 (Ill. App. Ct. 2015) ("A forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances."). As such, this factor weighs towards enforcement.

Applying and balancing the *Barrett* factors also supports enforcement of the forum-selection clause. 68 Ohio App. 3d at 824. The first factor—the controlling law—is neutral in terms of enforcement. The Agreement selects Ohio as the law governing any contractual disputes, but no argument has been made that the choice-of-law provision is not valid and enforceable or that Ohio law regarding breach of contract and tortious interference is so different from Illinois law that Illinois courts would be incapable of applying Ohio law in this case. The second factor—the residence of the parties—weighs against enforcement, as only TQL, which conducts business nationwide, including in Ohio, Illinois, and Colorado, has operations in Illinois, where as DeSantis resides in Colorado.

*Barrett* factors three through five each weigh in favor of enforcement. To the third factor—where the contract was executed or performed—DeSantis executed the Agreement in Illinois, where he was hired, and worked in TQL's Chicago office for a little over two years, the majority of his employment with TQL, before transferring to Chicago. To the fourth factor—the location of the witnesses and parties to the litigation—while DeSantis and Hyde are based in Colorado and the alleged breaches occurred during DeSantis's time at TQL's Colorado office, TQL avers that there are several witnesses located in Illinois that are relevant to TQL's policies regarding employee training and the

12

protection of trade secrets and customer relationships. (Dkt. 16, Ex. A.) Further, the only other potential witnesses identified by either party—members of LDI—are located in Buffalo, New York, which has no bearing on a choice of forum for this analysis. Finally, as to the fifth factor—the inconvenience of the selected forum—Illinois is centrally located between the parties and the potential witnesses and DeSantis has not provided any specific physical or financial reason why he cannot travel to or litigate in Illinois. Accordingly, there is no indication that Illinois would be so inconvenient a forum as to make litigation there unjust and unreasonable. *Ayyash*, 2018 WL 5994755 at *6.

Because there are insufficient factual allegations to support more than a suggestion of overreaching in the execution of the clause, Illinois public policy favors enforcement of forum-selection clauses, and, under the particular circumstances of the case, there is no indication that enforcement of the clause would result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable, the Court finds that the forum-selection clause contained in the Agreement is valid and enforceable to confer personal jurisdiction and venue on Illinois courts. For these reasons, the Court denies DeSantis's motion to dismiss for improper venue.

E. *Transfer of venue*

While the forum-selection clause is valid and enforceable as to require litigation in Illinois, the Court has discretion to transfer the case based on the doctrine of *forum non conveniens*. As codified at 28 U.S.C. § 1404(a), a federal court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

If an adequate alternative forum is available—that is, one in which venue is proper under 28 U.S.C. 1391(b)[3]—the court must evaluate whether private and public interest factors support transfer

---

[3] 28 U.S.C. 1391(b) provides that a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action

13

to that venue. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). In such cases, the court must only consider whether public interest factors—such as "administrative difficulties flowing from court congestion, local interest in having localized controversies decided at home, and the interest in having a trial in a forum that is at home with the law"—support transfer. *Ayyash*, 2018 WL 5994755 at *2; *see also Atl. Marine Const. Co.*, 571 U.S. at 63 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations . . . . In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.").

DeSantis argues that even if the forum-selection clause is valid and enforceable, this case should be transferred to the District of Colorado. The Court declines to assess whether the District of Colorado is an adequate alternative venue because the interest of justice is not served by overriding the forum-selection clause and transferring the case. As discussed above, there are no choice-of-law concerns about the ability of courts in Illinois to apply Ohio law in adjudicating this dispute. Further, Illinois has a legitimate interest in disputes involving a company with a significant commercial presence in the state such as TQL.

Finally, judicial economy and efficient use of the resources of the federal court system cautions against transfer. This case was initially filed over five years ago before the Southern District of Ohio in November 2018. The case was then dismissed by the *TQL I* court in April 2020 and denied reconsideration in July 2023. Pursuant to the Southern District of Ohio's holding on reconsideration,

---

is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

TQL filed the case here, in the Northern District of Illinois, in November 2023, where it was subsequently assigned to the Court in July 2024.

Absent a substantial showing that litigation of TQL's complaint is prohibitive in Illinois, the Court will not again burden the federal courts by effecting yet another transfer of this case. For these reasons, the Court denies DeSantis's motion to transfer the case to the District of Colorado.

**Conclusion**

Because the forum-selection clause between the parties properly confers personal jurisdiction and venue on this Court, the Court denies Defendant's motion to dismiss for improper venue with prejudice [12]. The Court denies Defendant's motion to transfer venue to the District of Colorado without prejudice, as transfer would not serve the interest of justice [12]. If, as litigation progress, it becomes evident that venue would be proper in a different district, the parties may present an appropriate motion at that time.

**IT IS SO ORDERED.**

Date: 1/10/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge